UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
ERNESTO ZENTENO, and NOE HUEY, on behalf of :
themselves and all others similarly situated,
                                             :
                      Plaintiffs,       :
                                               :      **21 Civ. 2082 (DG) (JRC)**
      -against-                :
                                               :
REGINA'S FAMILY PIZZA INC. d/b/a REGINA'S :
PIZZERIA, and MICHAEL WARD,
                                             :
                        Defendants.     :
--------------------------------------------------------------------X

 

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION FOR DEFAULT JUDGMENT**

 

PECHMAN LAW GROUP PLLC
Louis Pechman
Gianfranco J. Cuadra
488 Madison Avenue, 17th Floor
New York, New York 10022
(212) 583-9500
*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ii-v

PRELIMINARY STATEMENT ......................................................................................1

FACTUAL AND PROCEDURAL HISTORY ..............................................................2

ARGUMENT ...................................................................................................................4

I.      Legal Standard...................................................................................................4

II.     All Factors Favor Grant of a Default Judgment............................................5

        A.      Defendant's Default Is Willful ...............................................................5

        B.      Defendant Has Presented No Meritorious Defense ...............................6

        C.      Defendant's Inaction Prejudices Plaintiffs ............................................6

III.    Plaintiffs Have Established Defendant's Liability and Can Recover
        Damages ..............................................................................................................6

        A.      Defendant Is Subject to Both the FLSA and the NYLL.........................7

        B.      Minimum Wage Violations Under the NYLL........................................9

        C.      Overtime Wage Violations Under the FLSA and NYLL .....................10

        D.      Spread-of-Hours Pay Violations under the NYLL ..............................12

        E.      Defendant Unlawfully Retained Part of Plaintiffs' Wages ..................13

        F.      Defendant Violated the Wage Theft Prevention Act ............................13

        G.      Plaintiffs Should Be Awarded Liquidated Damages ............................14

        H.      Plaintiffs Are Entitled to Recover Pre- and Post-Judgment Interest ....................16

IV.     Plaintiffs are Entitled to Recover Their Reasonable Attorneys' Fees and
        Costs ..................................................................................................................17

        CONCLUSION.......................................................................................................22

# TABLE OF AUTHORITIES

**Cases**

*Allende v. Unitech Design, Inc.*, 783 F. Supp. 2d 509 (S.D.N.Y. 2011) ..................................20

*Anthony v. Franklin First Financial, Ltd.*, 844 F. Supp. 2d 504 (S.D.N.Y. Feb. 21, 2012)....................................................................................................................19

*Apolinar v. Global Deli & Grocery, Inc.*, No. 12-cv-3446, 2013 WL 5408122, at *6 (E.D.N.Y. Sept. 25, 2013).........................................................................................6, 9

*Arbor Hill Concerned Citizen Neighborhood Association v. County of Albany & Albany County Board of Elections*, 522 F.3d 182 (2d Cir. 2007) .........................................19

*Augusto Corrales v. AJMM Trucking Corp.*, No. 19 Civ. 4532, 2020 WL 1911189, at *1 (S.D.N.Y. Apr. 20, 2020) ...........................................................................................19

*Banasiewicz v. Olympia Mechanical Piping & Heating Corp.*, No. 10-cv-369, 2012 WL 4472033, at *1 (E.D.N.Y. Aug. 31, 2012)......................................................................9

*Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-cv-14226, 2008 WL 5560868, at *1 (S.D.N.Y. Oct. 27, 2008) .....................................................................................6

*Brown v. Barnes & Noble, Inc.*, No. 16 Civ. 7333, 2020 WL 2489061, at *1 (S.D.N.Y. May 14, 2020).....................................................................................................18

*Canaveral v. Midtown Diner NYC, Inc.*, No. 19-CV-635, 2019 WL 4195194, at *1 (S.D.N.Y. Sept. 5, 2019) ...............................................................................................11

*Cement & Concrete Workers District Council Welfare Fund v. Metro Foundation Contractors, Inc.*, 699 F.3d 230 (2d Cir. 2012) ...........................................................4

*Chowdhury v. Hamza Express Food Corp.*, 666 F. App'x. 59 (2d Cir. 2016) ...........................14

*De la Cruz v. Trejo Liquors, Inc.*, No. 16 Civ. 4382, 2019 WL 9573763, at *1 (S.D.N.Y. Sept. 10, 2019)...................................................................................................10

*Double Green Produce, Inc. v. Forum Supermarket Inc.*, 387 F. Supp. 3d 266 (E.D.N.Y. 2019)......................................................................................................................5

*Enron Oil Corp. v. Diakuhara*, 10 F.3d 90 (2d Cir. 1993) .......................................................4

*Espinosa v. Perez*, No. 18-cv-8855 (LGS)(SN), 2020 WL 2950978, at *1 (S.D.N.Y. Jan. 27, 2020), *rep. & rec. adopted*, 2020 WL 1130743, at *1 (S.D.N.Y. Mar. 9, 2020)................18

*Farbotko v. Clinton County of New York*, 433 F.3d 204 (2d Cir. 2005)..............................20, 21

*Galicia v. 63-68 Diner Corp.*, No. 13-cv-3689, 2015 WL 1469279, at *1 (E.D.N.Y. Mar. 30, 2015) ....................................................................................................................8

*Garcia v. AKR Corp.*, No. 11-cv-6184, 2013 WL 685613, at *1 (E.D.N.Y. Jan. 10, 2013)...................................................................................................................................9

*Gesauldi v. Dan Yant Inc.*, 6 F. Supp. 3d 264 (E.D.N.Y. 2014) ..................................6

*Gilbert v. Hotline Delivery*, No. 00-cv-0160, 2001 WL 799576, at *1 (S.D.N.Y. July 10, 2011)...................................................................................................................................7

*Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155 (2d Cir. 1992)...............6

*Gunawan v. Sake Sushi Restaurant*, 897 F. Supp. 2d 76 (E.D.N.Y. 2012).................................7

*Gusman v. Unisys Corp.*, 986 F.2d 1146 (7th Cir. 1993) ................................................19

*Heng Chan v. Sung Yue Tung Corp.*, No. 03-cv-6048, 2007 WL 1373118, at *1 (S.D.N.Y. May 8, 2007)...........................................................................................................16

*Indymac Bank, F.S.B. v. National Settlement Agency, Inc.*, No. 07-cv-6865, 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) ............................................................................5

*Jaramillo v. Banana King Corp.*, No. 12 Civ. 5649, 2014 WL 2993450, at *1 (S.D.N.Y. June 30, 2014)..................................................................................................................15

*Khait v. Whirlpool Corp.*, No. 06-cv-6381, 2010 WL 2025106, at *1 (E.D.N.Y. Jan. 20, 2010).................................................................................................................................17

*Leon v. Zita Chen*, No. 16-cv-480, 2017 WL 1184149, at *9 (E.D.N.Y. Mar. 29, 2017)..........15

*Lora v. J. V. Car Wash, LTC.*, No. 11-cv-9010, 2015 WL 4496847, at *1 (S.D.N.Y. July 24, 2015)..................................................................................................................................18

*Luna v. Gon Way Construction, Inc.*, No. 16-cv-1411, 2017 WL 835321, at *1 (E.D.N.Y Feb. 14, 2017) ............................................................................................................15

*Mason Tenders District Council v. Duce Construction Corp.*, No. 02 Civ. 9004, 2003 WL 1960584, at *1 (S.D.N.Y. Apr. 25, 2003)............................................................................5

*Mills v. Capital One*, 14 Civ. 1937, 2015 WL 5730008, at *11 (S.D.N.Y. Sept. 30, 2015).................................................................................................................................19

*Moon v. Kwon*, 248 F. Supp. 2d 201 (S.D.N.Y. 2002) ................................................15

*Orient Overseas Container v. Crystal Cove Seafood*, No. 10-cv-3166, 2012 WL 6720615, at *1 (S.D.N.Y. Dec. 28, 2012) ........................................................................21

*Perdue v. Kenny A.*, 599 U.S. 542 (2010) ...............................................................21

*Pereira v. J. Sisters Hair Care Products, Inc.*, No. 8-cv-4537, 2010 WL 2194808, at *1 (S.D.N.Y. Apr. 5, 2010)..........................................................................................15

*Perez v. Platinum Plaza 400 Cleaners, Inc.*, No. 12-cv-9353, 2015 WL 1881080, at *1 (S.D.N.Y. Apr. 24, 2015) ................................................................................................14

*Pineda v. Frisolino*, No. 15 Civ. 3774, 2017 WL 3835882, at *1 (S.D.N.Y. Aug. 29, 2017) .....................................................................................................................9, 14, 16

*Reilly v. Natwest Markets Group, Inc.*, 181 F.3d 253 (2d Cir. 1999) ........................................16

*Rowe v. CC Restaurant & Bakery, Inc.*, No. 17-CV-01423, 2019 WL 4395158, at *1 (E.D.N.Y. Aug. 15, 2019) ...........................................................................................12

*S.E.C. v. McNulty*, 137 F.3d 732  (2d Cir. 1998) ........................................................................5

*Salomon v. 4221 Hylan Boulevard Corp.*, No. 20 Civ. 1743 (E.D.N.Y. May 7, 2021)........19, 20

*Santana v. Latino Express Restaurants, Inc.*, 198 F. Supp. 3d 285 (S.D.N.Y. 2016) ......5, 6, 7, 9

*Torcivia v. Suffolk County*, 437 F. Supp. 239 (E.D.N.Y. 2020) ................................................20

*Transatlantic Marine Claims Agency v. Ace Shipping Corp.*, 109 F.3d 105 (2d Cir. 1997).......................................................................................................................................7

*United States v. Myers*, 236 F. Supp. 3d 702 (E.D.N.Y. 2017) ..................................................6

*Velandia v. Serendipity 3*, No. 16-cv-1799, 2018 WL 3418776, at *1 (S.D.N.Y. July 12, 2018)..............................................................................................................................19

*Williams v. Epic Security Corp.*, 368 F. Supp. 3d 651 (S.D.N.Y. 2019) ...................................18

*Zeng Liu v. Jen Chu Fashion Corp.*, No. 00-cv-4221, 2004 WL 33412, at *1 (S.D.N.Y. Jan. 7, 2004) ...............................................................................................................7

**Statutes & Regulations**

12 N.Y.C.R.R. § 146 ........................................................................................... passim

29 C.F.R. § 778.5 .........................................................................................................9, 10

29 U.S.C. § 201 ....................................................................................................................1

29 U.S.C. § 203 ....................................................................................................................8

29 U.S.C. § 207 ..................................................................................................................10

29 U.S.C. § 216 ............................................................................................................15, 17

29 U.S.C. § 260 ..................................................................................................................15

N.Y. C.P.L.R. § 5001 (McKinney 2019)........................................................................16

N.Y. C.P.L.R. § 5004 (McKinney 2019)........................................................................16

N.Y. Lab. L. § 193 (McKinney 2019) ........................................................................13

N.Y. Lab. L. § 652 (McKinney 2019) ........................................................................10

N.Y. Lab. L. § 663 (McKinney 2019) ..........................................................9, 16, 17

**Rule**

Fed. R. Civ. P. 55(b)(2) .............................................................................................7

## PRELIMINARY STATEMENT

Plaintiffs Ernesto Zenteno and Noe Huey (collectively, "Plaintiffs") worked as kitchen workers for Defendant Regina's Family Pizza Inc. ("Regina's Pizzeria" or "Defendant") at Regina's Pizzeria in Flushing, Queens. Throughout their employment, Plaintiffs regularly worked between thirty-seven to sixty-seven hours per workweek, but Defendant paid them on a day rate basis that failed to compensate them for minimum, overtime, and spread-of-hours wages due. Plaintiffs brought this Action on April 16, 2021 (the "Action"), on behalf of themselves and all similarly situated kitchen workers, to recover their unpaid wages, liquidated damages, statutory damages, pre- and post-judgment interest, and attorneys' fees and costs pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and the New York Labor Law ("NYLL").

To date, Defendant has failed to respond to Plaintiffs' Complaint or otherwise appear to defend this Action despite receiving numerous good faith warnings that Plaintiffs would seek a default judgment against it. Plaintiffs now move for default judgment against Defendant.[1] As is explained in further detail below, Plaintiffs have sufficiently stated claims against Defendant under the FLSA and the NYLL and proven their entitlement to damages under both statutes. By this Motion for Default Judgment (the "Motion"), Plaintiffs respectfully seek a default judgment against Defendant Regina's Pizzeria in the amount of $116,637.38,[2] inclusive of attorneys' fees and costs and pre-judgment interest calculated as of November 15, 2021.

---

[1] Although Plaintiffs brought their claims, including a claim for retaliation, against Defendants Regina's Pizzeria and its owner, Michael Ward, they seek a default judgment only against the corporate defendant and do not pursue their retaliation claim in this default.

[2] Plaintiffs' calculation of damages is attached as Exhibit 8 to the Declaration of Louis Pechman in Support of the Motion ("Pechman Decl."). *See* Pechman Decl. ¶ 18. Exhibits to the Pechman Decl. are referenced in this Memorandum of Law by the prefix "Ex." and their corresponding letter.

## FACTUAL AND PROCEDURAL HISTORY

Defendant Regina's Family Pizza Inc. owns and does business as Regina's Pizzeria, located at 176-49 Union Turnpike, Flushing, New York, 11215. Ex. 6 ¶ 2; Ex. 7 ¶ 2. Regina's Pizzeria is an Italian cuisine restaurant that prepares and serves dishes for its customers for on-premises consumption, takeout, and catering. Ex. 6 ¶ 3; Ex. 7 ¶ 3. The restaurant's annual gross revenues in 2020 and 2021 were over $500,000. *See* Ex. 6 ¶ 6; Ex. 7 ¶ 6. On average, the restaurant's sales on premises were approximately $3,000 per day on Friday, Saturday, and Sunday and $2,000 per day on Monday through Thursday. Ex. 7 ¶ 7. The restaurant also sold approximately $500 per day on GrubHub plus large catering orders of $1,000 to $1,500 each at least twice per month. *Id.* ¶ 8; *see also* Ex. 6 ¶ 7. Finally, Regina's Pizzeria spent an average of $1,000 to $2,000 on produce, $1,000 on cheese products, and $400 on flour per week. Ex. 7 ¶ 9. Regina's Pizzeria was closed on July 4, Thanksgiving, and Christmas Day. Ex. 6 ¶ 10; Ex. 7 ¶ 11.

Plaintiff Zenteno worked as a cook's aid and dishwasher at Regina's Pizzeria from May 2020 to December 10, 2020. Ex. 6 ¶ 2. From May 2020 to mid-November 2020, unless he was absent (*see id.* ¶ 11), he regularly worked approximately sixty-six hours per workweek, from approximately 11:00 a.m. to 10:30 p.m. six days per workweek, with a thirty-minute break per workday. *Id.* ¶ 8. From mid-November through the end of his employment, Zenteno regularly worked an average of thirty-seven hours per workweek, Monday from approximately 11:00 a.m. to 10:30 p.m., Wednesday from approximately 10:00 a.m. to 5:00 p.m., Thursday from approximately 10:00 a.m. to 10:30 p.m., and Friday from approximately 12:00 p.m. to 8:00 p.m., with a thirty-minute break per workday. *Id.* ¶ 9. Regina's Pizzeria paid him $110 per day worked in May 2020, $120 per day worked in June 2020, and $130 per day worked from mid-July to December 10, 2020. *Id.* ¶¶ 13–15.

Plaintiff Huey worked as a cook and dishwasher at Regina's Pizzeria from December 4, 2020, to March 29, 2021. Ex. 7 ¶ 2. Throughout his employment, Huey regularly worked approximately sixty-seven hours per workweek, Monday and Friday from approximately 10:00 a.m. to 10:00 p.m., Tuesday and Thursday from approximately 11:00 a.m. to 10:30 p.m., Saturday approximately from 11:00 a.m. to 11:00 p.m., and Sunday from approximately 10:00 a.m. to 9:00 p.m., with a thirty-minute break per workday. Ex. 7 ¶ 10. Regina's Pizzeria paid him $165 per day worked. *Id.* ¶ 12.

Neither Plaintiff hired, fired, interviewed, or disciplined employees at the restaurant. Ex. 6 ¶ 4; Ex. 7 ¶ 4. Regina's Pizzeria paid Plaintiffs' weekly wages in cash in envelopes, without accompanying wage statements. Ex. 6 ¶¶ 17, 19; Ex. 7 ¶¶ 14, 16. Regina's Pizzeria did not furnish Plaintiffs with documentation at any point throughout their employment periods reflecting their regular or overtime wage rates or their regular payday. Ex. 6 ¶¶ 18–19; Ex. 7 ¶¶ 15–16. Regina's Pizzeria also required Zenteno and Huey to "deposit" $780 and $800, respectively, to work at the restaurant. Ex. 6 ¶ 20; Ex. 7 ¶ 17. Plaintiffs were never paid back these "deposits." Ex. 6 ¶ 20; Ex. 7 ¶ 17.

Plaintiffs initiated this Action on April 16, 2016, and effected service of process on Defendants on May 12, 2021. Pechman Decl. ¶¶ 3, 6. Defendants' answer to the Complaint was due by June 2, 2021. *Id.* ¶ 7. Defendants never appeared in this Action. *Id.* On June 17, 2021, Plaintiffs mailed a final warning letter to Defendants, to which Defendants never replied. *Id.* ¶ 8. On July 14, 2021, Magistrate Judge James R. Cho issued an electronic Order directing Plaintiffs to file a status report letter by July 21, 2021. *Id.* ¶ 9. On July 19, 2021, Plaintiffs submitted a letter to the Court requesting it find Defendants in default. *Id.* ¶ 10. Plaintiffs mailed a copy of this letter to Defendants. *Id.* On July 21, 2021, Magistrate Judge James R. Cho directed Plaintiffs to request a certificate of Default from the Clerk of Court and later file a motion for default judgment. *Id.* ¶ 11.

On October 13, 2021, Magistrate Judge James R. Cho extended the time for Plaintiffs to file their request for a certificate of default to October 20, 2021. *Id.* ¶ 12.

In light of Defendants' failure to answer the Complaint or otherwise appear, Plaintiffs requested a certificate of default on October 11, 2021. *Id.* ¶ 13. The Clerk of Court entered it on October 25, 2021. *Id.* ¶ 14. Plaintiffs' Motion was therefore due by November 24, 2021. *See id.* ¶¶ 11, 14. On October 27, 2021, Plaintiffs mailed Defendants another warning letter attaching a copy of the entered Certificate of Default and a printout of the Court's electronic case docket. *Id.* ¶ 15. In their letter, Plaintiffs warned Defendants they would move for default judgment on November 15, 2021, if Defendants failed to appear by November 12, 2021. *Id.*; *see also* Ex. 5. Defendants never appeared, and Plaintiffs now move for a default judgment against Defendants. *Id.* ¶ 16.

## ARGUMENT

### I. Legal Standard

Pursuant to Federal Rule of Civil Procedure 55(b)(2), a court may enter a default judgment against a party whose default has been entered by the Clerk of Court under Rule 55(a). Despite the "oft-stated preference" for resolving disputes on the merits, the trial court has "sound discretion" to grant or deny a motion for a default judgment. *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993). In determining how to exercise that discretion, the court balances the need to expeditiously adjudicate cases against its responsibility to afford litigants an opportunity to be heard. *Id.* at 96.

A defaulting defendant is deemed to have admitted all well-pleaded factual allegations in a plaintiff's complaint, except for claims relating to damages. *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc.*, 699 F.3d 230, 234 (2d Cir. 2012).

## II.     All Factors Favor Grant of a Default Judgment

To determine whether to grant a default judgment, the court considers whether: (1) the default was willful; (2) the defaulting party has a meritorious defense to the plaintiff's claims; and (3) denial of the default judgment motion would prejudice the non-defaulting party. *Santana v. Latino Express Rests., Inc.*, 198 F. Supp. 3d 285, 291 (S.D.N.Y. 2016) (quoting *Mason Tenders Dist. Council v. Duce Const. Corp.*, No. 02 Civ. 9004, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003) (additional citation omitted)).   All factors weigh in favor of granting Plaintiffs' request for a default judgment.

### A.     Defendant's Default Is Willful

"A default is considered willful where the defendant fails to answer a complaint without explanation or justification." *Double Green Produce, Inc. v. Forum Supermarket Inc.*, 387 F. Supp. 3d 260, 266 (E.D.N.Y. 2019) (citing *S.E.C. v. McNulty*, 137 F.3d 732, 738–39 (2d Cir. 1998) (additional citations omitted)).   Here, Defendant was served with Plaintiffs' Summons and Complaint on May 12, 2021.   Pechman Decl. ¶ 6.   Since then, Defendant has failed to enter an appearance and respond to Plaintiffs' Complaint.   *Id.* Although Defendant has had over five months to retain an attorney and appear in this Action (*see id.* (noting service date of May 12, 2021)), Defendant has offered no explanation or justification for its failure to appear and answer Plaintiffs' Complaint.   Indeed, Defendant chose to ignore this Action even after receiving three separate warnings that Plaintiffs would seek a default judgment against it.   *See id.* ¶¶ 8, 10, 15.   These circumstances prove Defendant is purposely ignoring this Action.   *See Santana*, 198 F. Supp. 3d at 291 n.2 (finding defendants' failure to appear and respond to a complaint and motion for default judgment indicated willful conduct) (citing *Indymac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.*, No. 07-cv-6865, 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007)).

### B. Defendant Has Presented No Meritorious Defense

Because it has neither appeared nor filed an answer to the Complaint, Defendant has raised no meritorious defense to Plaintiffs' claims. Default judgment is favored in circumstances where a defendant's failure to respond to a complaint leaves the court unable to determine whether a defendant may have meritorious defenses. *United States v. Myers*, 236 F. Supp. 3d 702, 707 (E.D.N.Y. 2017); *Santana*, 198 F. Supp. 3d at 291 n. 2.

### C. Defendant's Inaction Prejudices Plaintiffs

In the absence of an appearance by Defendant, a denial of Plaintiffs' Motion would prejudice Plaintiffs because "there are no additional steps available to secure relief in this Court." *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-cv-14226, 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008) (citation omitted). Plaintiffs would be left without the opportunity to vindicate their rights. *Santana*, 198 F. Supp. 3d at 291 n.2.

### III. Plaintiffs Have Established Defendant's Liability and Can Recover Damages

In light of Defendant's default, the well-pleaded allegations in the Complaint must be accepted as true. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Gesauldi v. Dan Yant Inc.*, 6 F. Supp. 3d 264, 269 (E.D.N.Y. 2014). The Complaint and Plaintiffs' affidavits state claims against Defendant for violations of the overtime wage provisions of the FLSA and NYLL, the minimum wage and spread-of-hours pay provisions of the NYLL, the unlawful deductions provision of the NYLL, and the NYLL's Wage Theft Prevention Act, NYLL § 195 ("WTPA"), entitling Plaintiffs to recover damages. *See, e.g.*, *Apolinar v. Global Deli & Grocery, Inc.*, No. 12-cv-3446, 2013 WL 5408122, at *6 (E.D.N.Y. Sept. 25, 2013) ("A court must ensure that there is a basis for the damages sought by a plaintiff before entering judgment in the amount demanded."). "Where, as here, the defendant has never appeared, 'the Court's determination is based solely on plaintiff[s'] submissions.'" *Gesauldi*, 6 F. Supp. 3d at 269 (alteration in original)

(quoting *Gilbert v. Hotline Delivery*, No. 00-cv-0160, 2001 WL 799576, at *2 (S.D.N.Y. July 10, 2011)).

It is within the Court's discretion "whether or not to hold an evidentiary hearing" to determine and calculate damages. *Id.* at 269; *see also* Fed. R. Civ. P. 55(b)(2). However, "under Rule 55(b)(2), 'it [is] not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in the default judgment.'" *Transatlantic Marine Claims Agency v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997) (quotation omitted); *see also Santillan v. Henao*, 822 F. Supp. 2d 284, 293 (E.D.N.Y. 2011) ("In calculating damages, this Court relies on the submissions of plaintiff and has not required a hearing. The Second Circuit has expressly endorsed this approach so long as the court has 'ensured itself that there was a basis for the damages specified in the default judgment.'") (quoting *Transatlantic Marine Claims Agency*, 109 F.3d at 111 (internal quotation omitted)). In cases where "no records have been produced as a consequence of a defendant's default, courts have held that the 'plaintiff['s] recollection and estimates of hours worked are presumed to be correct.'" *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 88 (E.D.N.Y. 2012) (quoting *Zeng Liu v. Jen Chu Fashion Corp.*, No. 00-cv-4221, 2004 WL 33412, at *3 (S.D.N.Y. Jan. 7, 2004)). Here, Plaintiffs' unrebutted recollections and estimate of hours worked as reflected in their affidavits provide "sufficient evidence to establish damages with respect to Defendants' FLSA and NYLL violations 'with reasonable certainty.'" *Santana*, 198 F. Supp. 3d at 292 (quoting *Transatlantic Marine Claims Agency*, 109 F.3d at 111)*.*

## A. Defendant Is Subject to Both the FLSA and the NYLL

An employer is subject to the FLSA as "enterprise engaged in commerce" if it:

> (1) "has employees engaged in commerce or in the production of goods for commerce," or "has employees handling, selling, or otherwise working on goods or materials that have been

> moved in or produced for commerce by any person," and (2)
> has annual gross volume of sales made or business done of
> not less than $500,000.

*Galicia v. 63-68 Diner Corp.*, No. 13-cv-3689, 2015 WL 1469279, at *2 (E.D.N.Y. Mar. 30, 2015) (quoting 29 U.S.C. § 203(s)(1)(A)).

Zenteno worked at Regina's Pizzeria from approximately May 2020 to December 10, 2020. Pechman Decl. ¶ 18; Ex. 6 ¶ 2. Huey worked at Regina's Pizzeria from approximately December 4, 2020, to March 29, 2021. Pechman Decl. ¶ 18; Ex. 7 ¶ 2. Per the Complaint, Regina's Pizzeria (1) is an "enterprise engaged in interstate commerce" within the meaning of the FLSA, (2) has "employees engaged in commerce or the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce," and (3) had "an annual gross volume of sales in excess of $500,000" within the three years prior to the filing of the Complaint. Ex. 1 ¶¶ 10–12. Plaintiffs believe Regina's Pizzeria had annual gross revenues exceeding $500,000 in 2020 and 2021 based on the prices of dishes in the restaurant's menu, the restaurant's expenses, and its volume of sales due to its proximity to the St. John's University campus. Ex. 6 ¶¶ 6–7; Ex. 7 ¶¶ 6–9.

Regina's Pizzeria is a "restaurant" within the meaning of the New York State Hospitality Wage Order ("HWO") as an establishment that serves food and drinks for consumption on premises and for takeout, including catering. 12 N.Y.C.R.R. § 146–3.1(b) (2016); *see also* Ex. 6 ¶ 3; Ex. 7 ¶ 3. Plaintiffs' duties at Regina's Pizzeria included "chopping vegetables for salads, preparing sauces and dough for pizza, doing prep work, cleaning and dishwashing." Ex. 6 ¶ 4; Ex. 7 ¶ 4. Plaintiffs did not hire, fire, interview, or discipline employees or direct or instruct their work duties. Ex. 6 ¶ 4; Ex. 7 ¶ 4. Plaintiffs were therefore "employees" of Defendants for purposes of the HWO. *See* 12 N.Y.C.R.R. § 146–3.2(a). As such, the HWO also applies to Regina's Pizzeria.

In the default judgment context, Plaintiffs' uncontested allegations are sufficient to establish that Regina's Pizzeria is an employer subject to the requirements of the FLSA and NYLL. *See, e.g., Apolinar*, 2013 WL 5408122, at *5 (holding that, "in the absence of any opposition from Defendants," the uncontested allegations in the complaint sufficiently established that the defendants "were involved in interstate commerce and [] subject to the FLSA" for purposes of default judgment) (citing *Garcia v. AKR Corp.*, No. 11-cv-6184, 2013 WL 685613, at *3 (E.D.N.Y. Jan. 10, 2013); *Banasiewicz v. Olympia Mech. Piping & Heating Corp.*, No. 10-cv-369, 2012 WL 4472033, at *4 (E.D.N.Y. Aug. 31, 2012)).

Claims under the FLSA are subject to a three-year statute of limitation for "willful" violations and two years for all other violations. 29 U.S.C. § 255(a). The NYLL's statute of limitations is six years. N.Y. Lab. L. § 663(3). Because the Complaint was filed on April 16, 2021, and because neither Plaintiff worked at Regina's Pizzeria before 2020, Plaintiffs are entitled to recover their full damages owed under both statutes for the entirety of their employment periods. However, in "actions to recover unpaid minimum and overtime wages under both the FLSA and NYLL, Plaintiffs may recover under whichever statute provides the greater relief." *Pineda v. Frisolino*, No. 15 Civ. 3774, 2017 WL 3835882, at *11 (S.D.N.Y. Aug. 29, 2017); *see also See* 29 C.F.R. § 778.5. Plaintiffs request damages under the NYLL, because it is the statute that affords them greater relief.

## B. Minimum Wage Violations Under the NYLL

The NYLL ensures payment of a basic minimum wage rate. N.Y. Lab. Law § 652 (McKinney 2016); 12 N.Y.C.R.R. § 146–1.2. As a restaurant in New York City, Regina's Pizzeria should have paid Plaintiffs at least $15 per regular hour worked in 2020 and 2021. *See* 12 N.Y.C.R.R. § 146–1.2(a)(1)(i)(b). Although there is no explicit claim for unpaid minimum wages in the Complaint (Ex. 1), all facts underlying the claim are set forth in the Complaint. *See* Pechman Decl. ¶ 19(a).

Zenteno's regular rate of pay fell below $15 per hour on the workweeks of June 1 to 7, November 16 to 22, and November 30 to December 13 in 2020. Ex. 8 at 2, Col. I, Rows 11, 35, 37–28. Huey's regular wage rate fell below $15 per hour on his first and last workweeks at Regina's Pizzeria. *Id.* at 3 Col. I, Rows 7, 24. For these workweeks, per regular hour worked, Plaintiffs are owed the difference between their regular wage rates paid and the $15 minimum hourly wage rate. This equals $240.30 (*id.* at 1 Col. B, Row 7), of which $225.45 is owed to Zenteno (*id.* at 2, Col. L, Row 39) and $14.85 is owed to Huey (*id.* at 3, Col. L, Row 25).

### C. Overtime Wage Violations Under the FLSA and NYLL

The FLSA and NYLL require employers to pay employees at least 1.5 times their regular wage rate per hour worked over forty per workweek. 29 U.S.C. § 207; N.Y. Lab. L. § 652; 12 N.Y.C.R.R. § 146–1.4. Under the FLSA, if an employee is paid on a day rate basis, his regular rate is equal to the total compensation received divided by all hours worked per week. *See* 29 C.F.R. § 778.112. The employee is entitled to overtime wages at the half-time rate, which Defendant never paid. *Id.*; Ex. 6 ¶ 12; Ex. 7 ¶ 12. Here, because Defendant defaulted, it cannot rebut this conclusion. *See, e.g.*, *De la Cruz v. Trejo Liquors, Inc.*, No. 16 Civ. 4382, 2019 WL 9573763, at *5–6, 12 (S.D.N.Y. Sept. 10, 2019).

Under the HWO, employees like Plaintiffs must be paid hourly wages, and payment of their wages on a non-hourly basis fails to compensate them for any overtime hours worked. *See* 12 N.Y.C.R.R. § 146–3.5(b). If a restaurant fails to pay its employee on an hourly basis, the regular rate is calculated by dividing the non-hourly pay received by the lesser of 40 or the hours worked, and overtime is owed at one and one-half times the regular rate calculated. *See id.* §§ –1.4, –3.5(b). Because damages to Plaintiffs are greater under the NYLL than they are under the FLSA, as is explained below, the Court should award Plaintiffs damages under the NYLL. *See* 29 C.F.R. § 778.5.

Defendant paid Plaintiffs on a day rate basis throughout their employment periods. Ex. 1 ¶¶ 22–24, 28; Ex. 6 ¶¶ 12–15; Ex. 7 ¶ 12. Regina's Pizzeria paid Zenteno $110 per workday in May 2020, $120 per workday in June 2020, and $130 per workday from mid-July to December 10, 2020. Ex. 1 ¶¶ 22–24; Ex. 6 ¶¶ 13–15. Regina's Pizzeria paid Huey $165 per workday throughout his employment. Ex. 1 ¶ 28; Ex. 7 ¶ 12. From May 2020 to mid-November 2020, Zenteno regularly worked approximately sixty-six hours per workweek. *See* Ex. 1 ¶ 20; Ex. 6 ¶ 8. From mid-November 2020 to the end of his employment on December 10, 2020, Zenteno regularly worked approximately thirty-seven hours per workweek.[3] Ex. 1 ¶ 21; Ex. 6 ¶ 9. The restaurant was closed, and Zenteno did not work, on Thanksgiving and the Fourth of July. Ex. 6 ¶ 10. Due to personal and medical reasons, Zenteno also did not work two consecutive days in the beginning of June and one in mid-June 2020. Ex. 6 ¶ 11. Throughout his employment, Huey regularly worked approximately sixty-seven hours per workweek. *See* Ex. 1 ¶ 27; Ex. 7 ¶ 10. The restaurant was closed, and Huey did not work, on Christmas Day. Ex. 7 ¶ 11.

Defendant "suffered or permitted" Plaintiffs to work the schedules set forth above. *See* 12 N.Y.C.R.R. § 146–3.2(a). As noted, because Defendant paid Plaintiffs on a day rate basis, their "regular hourly rate of pay *shall be* calculated by dividing the employee's total weekly earnings . . . *by the lesser* of 40 hours or the actual number of hours worked by that employee during the work week." *Id.* § 146–3.5(b) (emphasis added); *see also Canaveral v. Midtown Diner NYC, Inc.*, No. 19-CV-635, 2019 WL 4195194, at *4 n.3 (S.D.N.Y. Sept. 5, 2019) ("[U]nder the NYLL, Canaveral's regular hourly rate would be determined by dividing his weekly salary by 40 hours."); *Rowe v. CC Rest. & Bakery, Inc.*, No. 17-CV-

---

[3]     In the Complaint, Zenteno stated he worked between 37 and 56 hours per week between mid-November and the end of his employment. However, because Zenteno does not recall when he worked overtime during these workweeks, he reports 37 hours worked per workweek in this period. Ex. 6 ¶ 9.

01423, 2019 WL 4395158, at *8 (E.D.N.Y. Aug. 15, 2019) ("Unlike the FLSA and those NYLL provisions concerning the non-hospitality industry, *the Hospitality Order contains no mechanism for rebutting the calculation based on a maximum 40-hour work week with evidence that the employee had an agreement with the employer to work more than 40 hours*." (emphasis added)).

Accordingly, Plaintiffs have established liability against Defendant for unpaid overtime wages under the NYLL and FLSA. Plaintiffs' regular hourly wage rate equals their pay received per workweek (Ex. 8 at 2–3, Col. G) divided by the lesser of 40 or their hours worked (*id.* at 2–3, Col. C). They are owed 1.5 times the regular wage rate for hours worked over forty. *See id.* at 2–3, Col. J. For example, Zenteno's regular hourly wage rate for his first workweek is $16.50, equal to $660 in wages paid divided by 40 hours. *Id.* at 2, Col. I, Row 7. For this workweek, he is owed $24.75 per hour worked over 40. *Id.* at 2, Col. J, Row 7. On the workweeks in which Plaintiffs are owed unpaid minimum wages, their overtime rate owed is equal to 1.5 times the minimum wage rate. For example, Zenteno's hourly wage rate was $12 on the workweek of June 1 to 7, 2020. *Id.* at 2, Col. I, Row 11. He should have been paid at least $22.50, equal to 1.5 times the $15 minimum hourly wage rate, per overtime hour worked this workweek. *Id.* at 2, Col. J, Row 11.

Plaintiffs' total overtime wages owed are $34,651.38, with $19,134 due to Zenteno and $15,517.38 due to Huey. *See id.* at 1, Col. D, Row 7.

### D.     Spread-of-Hours Pay Violations under the NYLL

New York restaurants must pay their employees one extra hour's pay at the full minimum wage rate for each shift worked that is longer than ten hours. 12 N.Y.C.R.R. § 146–1.6(a) ("[O]n each day on which the spread of hours exceeds 10, an employee shall receive one additional hour of pay at the basic minimum hourly rate."). "Small employers of ten or fewer employees" in New York City, such as Regina's Pizzeria (Ex. 6

¶ 5; Ex. 7 ¶ 5), were required to pay their employees a minimum wage rate of $15 per hour beginning December 31, 2019. 12 N.Y.C.R.R. § 146–1.2(a)(1)(i)(b).

Here, unless they were absent or the restaurant was closed, Plaintiffs regularly worked shifts longer than ten hours. Zenteno regularly worked between four and six shifts per workweek that exceeded ten hours. Ex. 1 ¶¶ 20-21; Ex. 6 ¶¶ 8–9. Huey regularly worked six shifts per workweek that exceeded ten hours. Ex. 1 ¶ 27; Ex. 7 ¶ 10. Defendant did not pay Plaintiffs any wages other than their day-rate pay; that is, Defendant did not pay them spread-of-hours pay. Ex. 6 ¶ 12; Ex. 7 ¶ 12 ("This was the only pay that I received from Defendants per workweek.").

In total, Plaintiffs are owed $4,050.00 in unpaid spread-of-hours wages, with $2,565 due to Zenteno and $1,485 due to Huey. *See* Ex. 8 at 1, Col. C, Row 7.

### E. Defendant Unlawfully Retained Part of Plaintiffs' Wages

Defendant violated the NYLL's prohibition on wage deductions by requiring Zenteno and Huey to "deposit" $780 and $800, respectively, and never reimbursing these sums. Ex. 6 ¶ 20; Ex. 7 ¶ 17. The NYLL prohibits employers from deducting amounts from employees' wages, whether directly or through a separate transaction, except for specific allowed purposes. N.Y. Lab. L. § 193 (McKinney 2019) (prohibiting wage deductions except those authorized in writing by employees for specific purposes to their benefit, such as for pension plans and insurance premiums). Because Defendant defaulted, it cannot prove that the required "deposits" were for a permitted purpose. Plaintiffs have therefore established liability and can recover their unreimbursed "deposits" of $800 and $780 from Defendant. *See* Ex. 8 at 1, Col. F, Rows 5–6.

### F. Defendant Violated the Wage Theft Prevention Act

The WTPA, as amended effective February 25, 2015, requires employers to provide each employee, at the time of hiring, with a notice reflecting, *inter alia*, the employee's

regular and overtime wages rates, regular pay day designated by the employer, and the employer's contact information. *See* N.Y. Lab. Law § 195(1)(a) (McKinney 2016). Employers must provide this notice "in English and in the language identified by each employee as the primary language of such employee." *Id.* The WTPA further requires employers to furnish each employee with a wage statement (*i.e.*, a paystub) with each wage payment. *Id.* § 195(3). The wage statement must reflect, *inter alia*, "the dates of work covered by that payment of wages, name of employee, name of employer . . . the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked." *Id.*

Defendant failed to provide Plaintiffs with a wage notice at the time of hiring. Ex. 1 ¶¶ 26, 30; Ex. 6 ¶ 18; Ex. 7 ¶ 15. Defendant paid Plaintiffs their weekly wages in cash, without accompanying wage statements. Ex. 1 ¶¶ 25, 29; Ex. 6 ¶¶ 17, 19; Ex. 7 ¶¶ 14, 16. Each Plaintiff may recover up to $5,000 per WTPA violation. *See* N.Y. Lab. L. §§ 198(1–b), 198(1–d) (McKinney 2016); *see also Perez v. Platinum Plaza 400 Cleaners, Inc.*, No. 12-cv-9353, 2015 WL 1881080, at *4 (S.D.N.Y. Apr. 24, 2015) (citing NYLL § 198(1–d)). Zenteno worked 179 days at Regina's Pizzeria and is entitled to recover $10,000 for both violations. Ex. 8 at 2, Rows 47–50. Huey worked 99 days at Regina's Pizzeria and can recover $4,950 for the wage notice violation and $5,000 for the wage statement violation. *Id.* at 3, Rows 33–36.

### G.    Plaintiffs Should Be Awarded Liquidated Damages

Plaintiffs are entitled to recover liquidated damages under either the FLSA or NYLL, but not under both for the same violations. *See, e.g., Chowdhury v. Hamza Express Food Corp.*, 666 F. App'x. 59, 60–61 (2d Cir. 2016). As noted, *supra* Section III.A, Plaintiffs seek damages under the NYLL because it is the statute that affords them greater relief. *Pineda*, 2017 WL 3835882, at *11 ("In actions to recover unpaid minimum and overtime

wages under both the FLSA and NYLL, Plaintiffs may recover under whichever statute provides the greater relief."); *see also Leon v. Zita Chen*, No. 16-cv-480, 2017 WL 1184149, at *9 (E.D.N.Y. Mar. 29, 2017) (citing *Luna v. Gon Way Const., Inc.*, No. 16-cv-1411, 2017 WL 835321, at *14 (E.D.N.Y Feb. 14, 2017) ("Courts should award damages under the statute that provides for the greater recovery.")).

"Both federal and state law provide for an award of liquidated damages to plaintiffs who establish that an employer has failed to pay required wages." *Jaramillo v. Banana King Corp.*, No. 12 Civ. 5649, 2014 WL 2993450, at *5 (S.D.N.Y. June 30, 2014). Liquidated damages equal of 100% of unpaid wages are "the norm" in FLSA cases. *Yang*, 427 F. Supp. 2d at 340 ("Under the FLSA, an employer who violates the statute's overtime compensation provision is liable for any unpaid overtime compensation and 'an additional equal amount as liquidated damages.'") (quoting 29 U.S.C. § 216(b)). A court may reduce the amount of liquidated damages only if defendants can prove that they acted "in good faith and that [they] had reasonable grounds for believing [their] act or omission was not a violation of the" FLSA. 29 U.S.C. § 260. "The employer's burden, though, is a difficult one to meet." *Yang*, 427 F. Supp. 2d at 340 (citation omitted). Likewise, the Court "shall allow" an employee to recover liquidated damages equal to 100% of all unpaid wages under the NYLL unless the "employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law." N.Y. Lab. L. § 198(1–a) (McKinney 2019). The standards under the NYLL and the FLSA are substantially the same. *See Moon v. Kwon*, 248 F. Supp. 2d 201, 235 (S.D.N.Y. 2002).

Because Defendant defaulted, it forfeited its ability to contest liquidated damages. *See Pereira v. J. Sisters Hair Care Prods., Inc.*, No. 8-cv-4537, 2010 WL 2194808, at *2 (S.D.N.Y. Apr. 5, 2010) (awarding plaintiffs liquidated damages against defaulting defendants based on allegations of unpaid wages). Plaintiffs are therefore entitled to recover

$40,521.68 in liquidated damages under the NYLL, equal to 100% of their unpaid minimum, overtime, and spread-of-hours wages and unlawful wage deductions. *See* N.Y. Lab. L. § 198(1–a); Ex. 8 at 1, Col. G, Row 7.

**H.  Plaintiffs Are Entitled to Recover Pre- and Post-Judgment Interest**

Plaintiffs are entitled to recover pre-judgment interest under the NYLL. N.Y. C.P.L.R. § 5001(a); N.Y. Lab. L. § 663(1); *Heng Chan v. Sung Yue Tung Corp.*, No. 03-cv-6048, 2007 WL 1373118, at *9–10 (S.D.N.Y. May 8, 2007) (awarding pre-judgment interest on principal damages recovered under the NYLL). Pre-judgment interest and liquidated damages under the NYLL are not functional equivalents, and the "court shall allow" Plaintiffs to recover both simultaneously. *See* N.Y. Lab. L. § 198(1–a); *Santillan,* 822 F. Supp. 2d at 298 (citing *Reilly v. Natwest Mkts. Grp., Inc.*, 181 F.3d 253, 265 (2d Cir. 1999)).

The NYLL pre-judgment interest rate is 9% per annum. N.Y. C.P.L.R. § 5004. When a plaintiff has incurred damages at various times, pre-judgment interest "shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001(b). Pre-judgment interest is "calculated from the midpoint of [the employee's] employment to the date of entry of judgment at an interest rate of nine percent per year." *Pineda*, 2017 WL 3835882, at *13.

Plaintiffs are entitled to recover pre-judgment interest at the rate of 9% per annum on any sums awarded by the Court for unpaid wages and unlawful wage deductions, accruing from the midpoint of their respective employment periods through the date the Court enters judgment. *See* N.Y. CPLR § 5004. Using the reasonable intermediate date method, Plaintiffs' total pre-judgment interest due as of November 15, 2021, is $3,784.53. Ex. 8 at 1, Col. H, Row 7. Interest will continue to increase by $5.60 for Zenteno and by $4.39 for Huey per day that goes by between November 15, 2021, and the date the Court enters judgment in this Action. *See* N.Y. C.P.L.R. § 5001(c).

Plaintiffs can also recover post-judgment interest should any sums be awarded by the Court, beginning on the date judgment is entered, at the rate prescribed by 28 U.S.C. § 1961. *See Fermin*, 93 F. Supp. 3d at 23 (awarding post-judgment interest in FLSA case).

## IV. Plaintiffs are Entitled to Recover Their Reasonable Attorneys' Fees and Costs

The FLSA and the NYLL provide for recovery of reasonable attorneys' fees and costs by successful plaintiffs. *See* 29 U.S.C. § 216(b); N.Y. Lab. Law §§ 198(1–a), (1–d), 663 (McKinney 2019). The FLSA and NYLL are remedial statutes designed to protect low-wage workers. "Attorneys who fill the private attorney general role must be adequately compensated for their efforts. If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk," like the risk presented here of collecting against an absent defendant. *Khait v. Whirlpool Corp.*, No. 06-cv-6381, 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010). Experienced counsel expended a significant but reasonable amount of time litigating this matter by interviewing Plaintiffs, investigating their claims, drafting the Complaint, attempting to engage Defendant to participate in this Action, and seeking a default judgment, including preparing this Motion.

Commensurate with counsel's experience and the regular hourly rate that PLG charges its clients, which the firm's hourly-paying clients actually pay, Plaintiffs requests attorneys' fees at the following rates for the attorneys involved in this litigation: $600 for Louis Pechman; $450 for Gianfranco J. Cuadra; and $175 for Mirian Albert. The professionals' biographies, outlining their extensive experience in wage-and-hour litigation, are set forth in the Pechman Declaration. *See* Pechman Decl. ¶¶ 25–37.

The hourly rates requested are reasonable. Unlike other members of the FLSA plaintiffs' bar in New York City, PLG regularly represents both employers and employees in wage-and-hour litigations. Pechman Decl. ¶¶ 25, 29, 32, 36, 37, 41. PLG's attorneys who worked on this Action have a high level of expertise in wage-and-hour matters. *See*

Pechman Decl. ¶¶ 25–37. Because of this, PLG's defense clients, including Fortune 500 companies, pay for the firm's legal services at each attorney's full hourly billing rate, which are the rates requested in this application. Pechman Decl. ¶¶ 25, 29, 32, 36, 39; *see also, e.g.*, *Brown v. Barnes & Noble, Inc.*, No. 16 Civ. 7333, 2020 WL 2489061, at *2 (S.D.N.Y. May 14, 2020) (recognizing that "an 'attorney's customary billing rate for fee-paying clients is ordinarily the best evidence of' a reasonable hourly rate'" and awarding a $650 hourly rate to two attorneys with 20 years of experience) (quotation omitted); *Williams v. Epic Sec. Corp.*, 368 F. Supp. 3d 651, 658 (S.D.N.Y. 2019) (concluding that an FLSA attorney's $600 hourly rate was "reasonable and [] consistent with other cases in this district" in light of the attorney's "vast experience practicing law and in wage-and-hour cases"); *Lora v. J. V. Car Wash, LTC.*, No. 11-cv-9010, 2015 WL 4496847, at *6 (S.D.N.Y. July 24, 2015) (approving rate requested, considering that "ADK's requested rates are the amounts that [both attorneys] actually charge to their hourly-paying clients in other employment matters" and that "the retainer agreements signed by plaintiffs in this case set forth a $[600] hourly rate as an alternative to the contingency fee basis for compensation").

PLG's attorneys should be at the top end of the range of fees awarded to wage-and-hour attorneys. Last year, in a contested fee application following a fully successful bench trial by Gianfranco J. Cuadra, partner at PLG and the attorney primarily responsible for overseeing this Action, Magistrate Judge Netburn determined that Louis Pechman's hourly rate of $600 is reasonable "[g]iven his decades of experience." *Espinosa v. Perez*, No. 18-cv-8855 (LGS)(SN), 2020 WL 2950978, at *5 (S.D.N.Y. Jan. 27, 2020), *rep. & rec. adopted*, 2020 WL 1130743, at *1 (S.D.N.Y. Mar. 9, 2020); *see also* Pechman Decl. ¶ 33. Judge Liman also awarded Louis Pechman's $600 hourly rate as reasonable in an FLSA

default judgment. *See Augusto Corrales v. AJMM Trucking Corp.*, No. 19 Civ. 4532, 2020 WL 1911189, at *4 (S.D.N.Y. Apr. 20, 2020*); see also* Pechman Decl. ¶ 33.

In *Espinosa*, Judge Netburn recommended only a modest $25 reduction to Gianfranco Cuadra's then-hourly rate of $400 as an associate attorney to account for the fact that he is a "plainly impressive" lawyer. Pechman Decl. ¶ 36. Judge Netburn did so in large part because Gianfranco Cuadra, at the time, was not yet a partner. *Id.* Gianfranco Cuadra is now a partner at PLG, and all of PLG's hourly-paying clients actually pay $450 per hour for his services. *Id.*

Although Magistrate Judge Pitman in *Manley*, Magistrate Judge Reyes in *Sajvin* (Pechman Decl. ¶ 29), District Judge Nathan in *Velandia v. Serendipity 3*, No. 16-cv-1799, 2018 WL 3418776, at *4 (S.D.N.Y. July 12, 2018), and Magistrate Judge Reyes in *Salomon v. 4221 Hylan Boulevard Corp.*, No. 20 Civ. 1743 (E.D.N.Y. May 7, 2021), all awarded a $500 hourly rate to Louis Pechman, they failed to consider several points. First, they did not consider that PLG's clients regularly pay the requested hourly rates. *Cf. Mills v. Capital One*, 14 Civ. 1937, 2015 WL 5730008, at *11 (S.D.N.Y. Sept. 30, 2015) ("The hourly rates used in making a fee award should be 'what a reasonable, paying client would be willing to pay.'") (citing *Arbor Hill Concerned Citizen Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 184 (2d Cir. 2007)); *see also Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir. 1993) ("The best measure of the cost of an attorney's time is what that attorney could earn from paying clients."); *Anthony v. Franklin First Fin., Ltd.*, 844 F. Supp. 2d 504, 508 (S.D.N.Y. Feb. 21, 2012) (giving "significant weight" to retainer agreements "indicat[ign] that the firm regularly charges" a rate to clients).

Second, those courts failed to consider the realities of practicing law in New York City, including the uniquely permeable boundaries between the Brooklyn and Manhattan courthouses of the Eastern and Southern Districts of New York. For example, in *Salomon*,

Judge Reyes relied on a decision from the Central Islip Eastern District of New York courthouse to state, without analysis, that fees awarded "in the Southern District of New York" "are higher than the rates in this District." *Salomon*, No. 20 Civ. 1743, at *14 n. 13 (citing *Torcivia v. Suffolk County*, 437 F. Supp. 239, 252 (E.D.N.Y. 2020)). This ignores that the billable rates of a Suffolk County attorney are not comparable to those of an attorney practicing in Brooklyn or Queens. The billable rates of attorneys practicing in any borough in New York City dwarf those of attorneys practicing in Suffolk and Nassau Counties. The Court is free to recognize this based on its "own familiarity with the rates prevailing in the district." *Farbotko v. Clinton Cty. of N.Y.*, 433 F.3d 204, 209 (2d Cir. 2005).

Third, no decision considers an equally baseless distinction that has arisen in acceptable "reasonable" hourly billable rates between wage-and-hour and other practices. It defies logic that a fresh out-of-law-school first-year bankruptcy associate attorney representing a Fortune 500 corporation can be awarded a $600 or more per hour billable rate, yet a wage-and-hour partner with over thirty-five (35) years of experience representing low wage workers is capped at $500 per hour. *See* Pechman Decl. ¶ 42. Likewise, it makes little sense that Gianfranco Cuadra should be awarded anything less than his usual billable hourly rate of $450 as a partner at PLG, when he billed $475 per hour in 2013 as a fourth-year associate at Winston & Strawn LLP. *See id.* ¶ 36.

Reducing PLG's rates leads to the absurd result that a speculative litigation (such as this case, which will likely result in an uncollectable default), will be rewarded at an hourly rate that is less than that paid by every one of PLG's hourly-paying clients for the last five years. *See* Pechman Decl. ¶ 41. This result would undermine the policy of encouraging competent counsel to take on FLSA cases. *See, e.g.*, *Allende v. Unitech Design, Inc.*, 783 F. Supp. 2d 509, 511 (S.D.N.Y. 2011) (observing "[t]he award of attorneys' fees in [FLSA] cases encourages the vindication of Congressionally identified policies and

rights."). In this regard, the Second Circuit counsels that "[r]ecycling rates in prior cases without considering whether they continue to prevail" "may create disparity between compensation available" under a statute, such as the FLSA, "and compensation available in the marketplace." *Farbotko*, 433 F.3d at 209. This policy lies at the heart of fee-shifting statutes, such as Section 1988, the NYLL, and the FLSA. *Id.*

As the Supreme Court has noted, "[T]he lodestar method produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a client who was billed by the hour in a comparable case." *Perdue v. Kenny A.*, 599 U.S. 542, 551–52 (2010) (emphasis in original). This "rough" approximation cannot be stagnant and must consider the economic realities of law practice, especially in a region like New York City. *See Farbotko*, 433 F.3d at 209. A minimum wage worker suing for wage theft under the FLSA is simply not an hourly-paying client of any attorney in New York City. *See, e.g., Orient Overseas Container v. Crystal Cove Seafood*, No. 10-cv-3166, 2012 WL 6720615, at *9 (S.D.N.Y. Dec. 28, 2012) ("[C]ase law notes that [t]he appropriate measure is the market rate for [the attorney's] services by clients who can afford them, not [the] client's perceived ability to pay."). There is no basis to rely on a fictional market rate when counsel has a well-established hourly rate paid by scores of individuals, executives, and companies. *See* Pechman Decl. ¶¶ 29, 31–33, 36. Accordingly, PLG's rates awarded should be the same as those paid by its hourly-paying clients for the last five years. *Id.*

For these reasons and those stated in the accompanying Declaration of Louis Pechman (Pechman Decl. ¶¶ 25–43), Plaintiffs requests $11,347.50 in attorneys' fees. Plaintiffs also requests $512 in costs incurred by counsel prosecuting this Action. *See* Pechman Decl. ¶ 45. PLG paid these costs on behalf of Plaintiffs pursuant to the terms of their retainer agreements with the firm. The costs, consisting of the Court's case initiation

filing fee of $402 and $110 for service of process fees, were reasonably and necessarily incurred and are documented and identifiable. Pechman Decl. ¶ 44.

## CONCLUSION

For the foregoing reasons and those set forth in the accompanying Pechman Declaration, Plaintiffs respectfully request that the Court issue a default judgment in their favor and against Defendant in the amount of at least $116,637.38 plus post-judgment interest.

Dated: New York, New York
        November 11, 2021

PECHMAN LAW GROUP PLLC

By:_____
    Gianfranco J. Cuadra
    Louis Pechman
    488 Madison Avenue, 17th Floor
    New York, New York 10022
    Tel.: (212) 583-9500
    cuadra@pechmanlaw.com
    pechman@pechmanlaw.com
    *Attorneys for Plaintiffs*