UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ERNESTO ZENTENO, and NOE HUEY, on behalf of themselves and all other similarly situated, Plaintiffs, -against- REGINA'S FAMILY PIZZA INC. d/b/a REGINA'S PIZZERIA, and MICHAEL WARD, Defendants. | **21 Civ. 2082 (DG)(JRC)** **DECLARATION OF LOUIS PECHMAN IN SUPPORT OF PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT** |

I, Louis Pechman, pursuant to 28 U.S.C. § 1746, state and declare, as follows:

1. I am the principal attorney of Pechman Law Group PLLC ("PLG") in New York, New York. Gianfranco J. Cuadra, a partner at PLG, and I are the attorneys primarily responsible for litigating the claims of Plaintiffs Ernesto Zenteno and Noe Huey (collectively, "Plaintiffs"), in this Action. I submit this Declaration, in accordance with the Court's Orders dated July 21, 2021, and October 13, 2021, in support of Plaintiffs' Motion for Default Judgment against Defendant Regina's Family Pizza Inc. d/b/a Regina's Pizzeria ("Regina's Pizzeria" or "Defendant"). The statements contained in this declaration are based on my personal knowledge and review of the docket and pleadings in this Action.

**BACKGROUND FACTS AND PROCEDURE**

2. On January 25, 2021, Plaintiff Zenteno, through counsel, sent a demand letter by FedEx to Regina's Pizzeria to engage in pre-suit discussions of Zenteno's claims. Zenteno waited for months and did not receive a response.

3. On April 16, 2021, Plaintiffs initiated this collective wage-and-hour action by filing their Complaint (the "Complaint") against Regina's Pizzeria and its owner

Michael Ward. *See* Compl., ECF No. 1. A copy of the Complaint is attached to this Declaration as Exhibit 1.

4. On April 28, 2021, Huey filed a consent to be a party plaintiff form. ECF No. 5.

5. On April 30, 2021, Zenteno filed a consent to be a party plaintiff form. ECF No. 6.

6. On May 12, 2021, Peter J. McLoughlin, a process server from the company PM Legal that I retained, served Defendant and Ward by personally delivering copies of the Summonses and Complaint on Mark Daci, a person authorized to accept service at 176-49 Union Turnpike, Flushing, New York 11215. Plaintiffs filed copies of Mr. McLoughlin's affidavits of service with the Court on May 27, 2021. ECF Nos. 7–8. Copies of the affidavits of service are attached to this Declaration as Exhibit 2.

7. Defendants' Answer to the Complaint was due by June 2, 2021. *See* ECF Nos. 7–8 (notations on ECF stating "answer due by 6/2/2021"). Defendants did not file an Answer, contact my firm, or otherwise appear in this Action.

8. On June 17, 2021, Mr. Cuadra mailed a letter to Ward in good faith to advise him to retain an attorney and file an Answer (copy of the letter attached as Exhibit 3). Mr. Cuadra advised Ward that Plaintiffs would seek a default judgment if Defendants failed to appear and respond to the Complaint. *See* Ex. 3. There has been no response to date.

9. On July 14, 2021, Magistrate Judge Cho issued an electronic Order directing Counsel for Plaintiffs to file a status report letter by no later than July 21, 2021.

10. On July 19, 2021, Plaintiffs filed a letter informing the Court of Defendants' failure to respond to Plaintiffs' final warning letter and requesting that the Court find Defendants in default. ECF No. 10. Plaintiffs' counsel mailed a copy of this letter to Defendants. Again, Defendants never replied or appeared in the Action.

11. On July 21, 2021, Magistrate Judge James R. Cho issued an electronic Order directing Plaintiffs to request a certificate of Default from the Clerk of Court. "Within 30 days of receipt of the certificate of default, the plaintiff[s] shall file a motion for default judgment in accordance with Judge Gujarati's rules."

12. On October 13, 2021, Magistrate Judge James R. Cho issued another electronic Order extending the time for Plaintiffs to file their request for a certificate of default to October 20, 2021.

13. On October 20, 2021, Plaintiffs filed a Request for Certificate of Default, a Proposed Order, and an accompanying Declaration in Support. ECF No. 11. Plaintiffs mailed copies of these documents to Defendants.

14. On October 25, 2021, the Clerk of Court issued a Certificate of Default as to both Defendants. ECF No. 12. A copy of the Certificate of Default is attached to this Declaration as Exhibit 4.

15. On October 27, 2021, Plaintiffs mailed a copy of the Certificate of Default and a printout of the electronic case docket, reflecting the July 21 and October 13 Orders, to Defendants enclosed to a letter again warning them that Plaintiffs will file a motion for default judgment by November 15, 2021 (enclosed as Exhibit 5). The letter informed Defendants they can still retain an attorney and appear in the Action. Ex. 5.

16. To date, Plaintiffs' counsel has not heard from Defendants. As such, pursuant to Judge Cho's Orders dated July 21 and October 13, 2021, Plaintiffs submit this Motion for default judgment against Regina's Pizzeria. Plaintiffs do not seek a default judgment against Ward, the owner of Regina's Pizzeria.

**PLAINTIFFS' DAMAGES**

17. As set forth in the Complaint and each Plaintiff's Affidavit in Support of their Motion for Default Judgment (attached as Exhibits 6 and 7), Defendant willfully

violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and the New York Labor Law § 190 *et seq.* ("NYLL") by failing to pay Plaintiffs minimum, overtime, and spread-of-hours wages, to provide them with required wage statements and notices, and by keeping portions of Plaintiffs' wages as "deposits" that were never returned.

18. Zenteno worked a cook's aid and dishwasher at Regina's Pizzeria from May 2020 to December 2020. Ex. 6 ¶ 2. Huey worked as a cook and dishwasher at Regina's Pizzeria from December 4, 2020, to March 29, 2021. Ex. 7 ¶ 2.[1] Plaintiffs were paid on a day rate basis throughout their employment, even though they regularly worked well over forty hours per workweek. Ex. 6 ¶¶ 8, 13–15; Ex. 7 ¶¶ 10, 12. Based on the uncontested and well-pleaded facts of the Complaint and Plaintiffs' affidavits, Plaintiffs' total damages as of today, November 15, 2021, are $104,777.88. Enclosed as Exhibit 8 is a spreadsheet reflecting Plaintiffs' damages.[2] These calculations do not include post-judgment interest or Plaintiffs' attorneys' fees and costs, which Plaintiffs are also entitled to recover separately from Defendant under the FLSA and NYLL.

19. Specifically, as set forth in Exhibit 8, Plaintiffs are owed:

a. Unpaid minimum wages totaling $240.30 (Ex. 8 at Col. B, Row 7). Although not expressly set forth as a claim in the Complaint (*see* Ex. 1), all facts underlying Plaintiffs' unpaid minimum wage claims are alleged in the Complaint. For example, Zenteno worked "approximately between thirty-seven and fifty-six hours per workweek, four to five days a week" from mid-November 2020 to the end of his employment on December 10, 2020. Ex. 1 ¶ 20. He was paid $120 per workday during this period. *Id.* ¶ 23. If he worked four days, thirty-seven hours, and was paid $480 in a week, his hourly wage rate paid was $12.97 (*see* 12 N.Y.C.R.R. § 146–3.5(b)), below the $15 per hour minimum wage rate applicable in 2020. *Id.* § 146–1.2(a)(1)(i). Likewise, although not expressly stated in the Complaint, Defendants paid Huey $165 per day worked. Ex. 1 ¶ 27. As such, if he worked more than 11 hours on any day, and less than 40 hours on any week, his hourly wage rate fell below $15. *See* 12 N.Y.C.R.R. § 146–3.5(b).

[1] The Complaint, Ex. 1, inadvertently described Huey as having worked as a cook's aid.

[2] The spreadsheet is also available in its native Excel format for the Court's review if necessary.

b. Spread-of-hours pay totaling $4,065.00 (Ex. 8 at Col. C, Row 7). Plaintiffs' spread-of-hours wages equal one hour's pay at the applicable full minimum wage for each workday that exceeded ten hours per workweek. 12 N.Y.C.R.R. § 146–1.6.

c. Overtime wages totaling $34,651.38 (Ex. 8 at Col. D, Row 7), equal to Plaintiffs' overtime wage rate times their overtime hours worked per workweek throughout their employments (the "Statutory Period"). Plaintiffs' overtime wage rate equals their regular wage rate multiplied by 1.5. Because Plaintiffs were paid on a day rate basis, their regular wage rate equals their total weekly pay divided by the lesser of forty or the hours worked per workweek. *See* 12 N.Y.C.C.R. § 146–3.5.

d. Defendant required Plaintiffs to make a money "deposit" to work at Regina's Pizzeria. *See* Ex. 1 ¶ 32. Zenteno made a $780 deposit, which was never refunded to him. Ex. 6 ¶ 20. Huey made an $800 deposit, which was never refunded to him. Ex. 7 ¶ 17. Both "deposits" are unlawful deductions from Plaintiffs' wages in violation of the New York Labor Law. *See* N.Y. Lab. L. § 193

e. Liquidated damages totaling $40,521.68 (Ex. 8 at Column G, Row 7), equal to the total wages and unlawful deductions owed to Plaintiffs (*i.e.*, Ex. 8 at Cols. E–F, Row 7).

f. Pre-judgment interest under the NYLL totaling $3,784.53 as of November 15, 2021 (Ex. 8 at Col. H, Row 7), as calculated pursuant to NY CPLR §§ 5001(b) and 5004 using the reasonable intermediate point method. Pre-judgment interest due will continue to increase by $5.60 and $4.39 per day for Zenteno and Huey, respectively.

g. NYLL Wage Theft Prevention Act damages totaling $19,950.00 (Ex. 8 at Col. I, Row 7) arising out of Defendants' failure to provide Plaintiffs with required wage notices at the time of hiring and wage statements with each payment of wages.

20. Plaintiffs' damages are explained in further detail in the accompanying Memorandum of Law in Support of Plaintiffs' Motion for Default Judgment. Furthermore, as evidence in support of the proposed damages, each Plaintiff submitted an Affidavit in Support of the Motion for Default Judgment reciting all facts necessary to establish Defendant's liability and damages under the FLSA and NYLL. *See* Exs. 6–7.

21. An inquest into damages in not necessary in this case. While it is within the Court's discretion to hold an evidentiary hearing on the issue of damages, the Second Circuit has "expressly endorsed" the calculation of damages based on the submissions of a plaintiff in the default judgment context, "so long as the court has 'ensured itself that there was a basis for the damages specified in the default judgment.'" *Santillan v. Henao*,

822 F. Supp. 2d 284, 293 (E.D.N.Y. 2011) (quoting *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir.1997) (internal quotation omitted)).

22. While Plaintiffs "ha[ve] the burden of proving that [they] performed work for which [they were] not properly compensated," *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), the "easiest way for an FLSA plaintiff to discharge his or her burden of proof" is to secure employer records, the maintenance of which is required by the FLSA. *Santillan*, 822 F. Supp. 2d at 294 (quoting *Anderson*, 328 U.S. at 687). By defaulting, a defendant "deprive[s] the plaintiff of the necessary employee records required by the FLSA, thus hampering plaintiff's ability to prove his damages." *Id.*

23. As such, where a defendant fails to dispute a plaintiff's allegations because of a default, a plaintiff's "sworn declaration containing information as to hours worked and rates of pay based on estimation and recollection" provides a sufficient basis for damages calculations. *Id.*; *see also Moreno Cocoletzi v. Fat Sal's Pizza II, Corp.*, No. 15-cv-02696, 2018 WL 7291455, at *12 (S.D.N.Y. Dec. 6, 2018), *rep. & rec. adopted sub nom. Cocoletzi v. Fat Sal's Pizza II, Corp.*, No. 15-cv-02696, 2019 WL 92456 (S.D.N.Y. Jan. 3, 2019) (well-pleaded factual allegations of the complaint, declarations submitted by plaintiffs in support of their motion for default judgment, and a damages chart were sufficient to meet plaintiffs' burden to establish damages to a reasonable certainty); *Xin Long Lin v. New Fresca Tortillas, Inc.*, No. 18-cv-3246, 2019 WL 3716199, at *2 (E.D.N.Y. May 1, 2019), *rep. & rec. adopted*, No. 18-cv-3246, 2019 WL 3714600 (E.D.N.Y. May 28, 2019) (plaintiff's "declaration describing his approximate dates of employment, along with his average hours worked and wages received per week" and damages calculations attached to plaintiff's default judgment motion provided sufficient basis for damages calculations).

24. Accordingly, the well-pleaded factual allegations in the Complaint, Plaintiffs' Affidavits in Support of Motion for Default Judgment, and the damages

calculations attached as Exhibit 8 provide a sufficient basis for the calculation of damages in this case, and a damages inquest is unnecessary.

**PLAINTIFFS' ATTORNEYS' FEES AND COSTS ARE REASONABLE**

25. Pechman Law Group PLLC ("PLG") is a law firm that represents both workers and businesses in workplace disputes. We have advocated for busboys and construction workers as well as for corporate executives and Fortune 500 companies.

26. In signed retainer agreements, Plaintiffs were given the option to retain PLG at is usual hourly rates, which are set forth below in this Declaration, or on a contingency fee basis. PLG agreed to represent Plaintiffs purely on a contingency fee basis of 33.33% of any amount recovered after reimbursement of its costs incurred in prosecuting the Action. As such, if the Action resulted in no recovery for Plaintiffs, PLG would *lose* money; it would receive no payment at all for its time worked and would have to pay out-of-pocket for all expenses incurred prosecuting the Action.

27. Since graduating from Fordham Law School over thirty-five years ago, I have specialized in labor and employment law. I was an attorney at Skadden, Arps, Slate, Meagher & Flom LLP; Vladeck, Waldman, Elias & Engelhard, P.C.; the Daily News; and Lambos & Giardino/Lambos & Junge. From 1996 through 2014, I was a partner at Berke-Weiss & Pechman LLP. On January 1, 2015, I founded PLG.

28. I am licensed to practice law in the State of New York and am admitted in all District Courts of New York, as well as the Second Circuit Court of Appeals. I am also licensed to practice in the State of New Jersey and am admitted in the United States District Court for the District of New Jersey.

29. Over the past several years, I have handled over 300 FLSA wage-and-hour cases, representing both employees and employers, including Fortune 500 corporations. *See Sajvin v. Singh Farm*, No. 17-cv-4032, 2018 WL 4214335, at *9 (E.D.N.Y. Aug. 13, 2018)

(noting that "Pechman's experience, expertise, and reputation in this District [warranted] an award slightly above the current stagnant hourly rate") (Reyes, M.J). I have been appointed class counsel or counsel for FLSA collective classes in several wage-and-hour cases. *See, e.g., Manley v. Midan Rest., Inc.*, No. 14 Civ. 1693, 2017 WL 1155916, at *9 (S.D.N.Y. Mar. 27, 2017) ("Louis Pechman and the Pechman Law Group have significant experience representing both employers and employees in wage and hour actions in this District. . . . Louis Pechman has an excellent reputation in this District in the field of employment law."); *Carino v. Broadway & 166, LLC*, No. 10 Civ. 8506, Docket No. 35 at *4 (S.D.NY. May 1, 2013) (recognizing that Louis Pechman "used his considerable expertise in this wage and hour case to achieve an excellent result for the Class in a highly efficient manner"); *In re Chickie's and Pete's Wage and Hour Litigation*, No. 12 Civ. 6820, Docket Entry No. 80 at *1 (consolidating cases and appointing Louis Pechman as lead counsel) (E.D. Pa. Mar. 28, 2013); *Duchene v. Michael Cetta, Inc.*, No. 06 Civ. 4576, 2009 WL 5841175, at *2 (S.D.NY. Sept. 10, 2009) (recognizing Louis Pechman's "extensive experience in litigating wage and hour class actions").

30. I speak frequently on employment law issues, with a focus on wage-and-hour topics. Since 2010, I have moderated an annual program at the New York County Lawyers' Association on "How to Handle a Wage and Hour Case." I will again moderate this program in November 2021. On October 6, 2015, I moderated a program at the City Bar on "Current Issues in Settlement of FLSA Cases," which included Judge Lewis A. Kaplan, Magistrate Judge Ronald L. Ellis, and Judge Brian M. Cogan. On September 30, 2015, I moderated a Bloomberg BNA webinar entitled "Top Ten FLSA Litigation Issues: 2015 Edition," which included Magistrate Judge Ramon E. Reyes. On March 2, 2016, I spoke at the New York Hospitality Restaurant Alliance on tipping policies at New York City restaurants. On March 11, 2016, I spoke at the New York City Employment Law

Institute on a panel titled, "Prosecuting & Defending Wage and Hour Cases." On September 29, 2016, I spoke in a panel, which included Magistrate Judge Steven M. Gold, in a Bloomberg BNA webinar titled "Top Ten FLSA Litigation Issues: 2016 Edition." On October 24, 2016, I moderated a program at the New York City Bar titled "FLSA Settlement Issues One Year After *Cheeks*," presented by a panel including Chief Magistrate Judge Debra Freeman, District Judge Richard Sullivan, and Magistrate Judge Marilyn Go. On June 12, 2017, I served as a panelist in the American Conference Institute's 30th National Forum on Wage & Hour Claims and Class Actions as part of a presentation titled "Trends in Wage & Hour Class & Collective Actions." Every year since 2017, I have moderated a New York City Bar program titled "FLSA Math: How to Calculate Wage-Related Damages." I last moderated this program on October 27, 2021. I was also Chair of the Restaurant and Hospitality Law Committee of the Bar of the City of New York from 2014 to 2017. I am also a frequent contributor to the New York Law Journal. My recent articles include *Cheeks v. Freeport Pancake House: Five Years Later* (Aug. 6, 2020) and *Rights of Undocumented Workers in Wage Theft Cases* (Mar. 13, 2020). I am also an Adjunct Professor at Fordham University School of Law, where I teach a course titled "Wage Theft: Employee Rights and Employer Responsibilities."

31. PLG is "A-V" rated by Martindale-Hubbell and I have been selected by my peers for inclusion in The Best Lawyers in America and in New York Super Lawyers since 2007. PLG has been selected by Best Lawyers as a "Tier 1" New York City law firm in the areas of "Employment Law – Individuals" as well as "Employment Law – Management" every year from 2017 to 2021. I have also been selected as a Fellow of the American Bar Association, an honorary organization limited to 1% of attorneys who have demonstrated outstanding achievements and dedication to the highest principles of the legal profession.

I was recognized in 2021 as one of the Law Dragon 500 leading U.S. Corporate Employment lawyers.

32. Since 2013, my hourly billable rate has been $600 for all clients. Over 300 of my clients have paid my fees at this rate throughout the last several years, including an advertising company, a shoe manufacturer, a money management firm, several restaurants and bakeries, a Broadway theater, a financial recruiting firm, a security guard company, a hedge fund, and a Fortune 100 transportation company. PLG also represents individuals, such as managing directors at Wall Street firms, executives, and other individuals, who retain my services at my $600 per hour rate.

33. Two years ago, Magistrate Judge Reyes awarded me only a slightly reduced fee of $500 per hour, instead of my normal $600 per hour rate, noting that my "experience, expertise and reputation in this District" require "an award slightly above the current stagnant hourly rate." *Sajvin v. Singh Farm*, No. 17-CV-04032, 2018 WL 4214335, at *9 (E.D.N.Y. Aug. 13, 2018), *rep. & rec. adopted*, 2018 WL 4211300, at *1 (E.D.N.Y. Sept. 4, 2018). Since then, the United States District Court, Southern District of New York has awarded me my regular hourly billable rate of $600 in a contested fee application following a bench trial successfully first-chaired by Mr. Cuadra in a wage-and-hour case, *see Espinosa v. Perez*, No. 18 Civ. 8855, 2020 WL 1130743, at *1, 4 (S.D.N.Y. Mar. 9, 2020) (adopting Report & Recommendation awarding Pechman $600 per hour), and in a wage-and-hour case resulting in a default judgment, *see Augusto Corrales v. AJMM Trucking Corp.*, No. 19 Civ. 4532, 2020 WL 1911189, at *4 (S.D.N.Y. Apr. 20, 2020).

34. Gianfranco J. Cuadra, my partner at PLG working on this matter, received his J.D. degree *magna cum laude* from Hofstra Law School in May 2009, where he was Research Editor of the Hofstra Law Review and an honorary member of the National Order of Scribes for outstanding legal writing. Mr. Cuadra is admitted to practice in the

United States District Courts for the Eastern, Western, and Southern Districts of New York and is a member in good standing of the New York State Bar. Prior to joining PLG, Mr. Cuadra worked as an associate attorney at Winston & Strawn LLP. He first worked at PLG as an associate attorney from March 2015 through December 2020. Since January 1, 2021, Mr. Cuadra has been a partner at PLG. Since 2015, Mr. Cuadra has litigated over 100 wage-and-hour cases ranging from individual plaintiff to class and collective actions on behalf of both employees and management.

35. Mr. Cuadra has presented in numerous CLE-accredited programs, most of which concern wage-and-hour issues. Every year since 2017, Mr. Cuadra has served as a panelist in a New York City Bar program titled "FLSA Math: How to Calculate Wage-Related Damages," which he last did on October 27, 2021. On November 15, 2018, Mr. Cuadra served as a panelist in a day-long mediator training program organized by the United States District Court, Southern District of New York on how to mediate wage-and-hour disputes under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, and the NYLL. On May 6, 2020, Mr. Cuadra served as a panelist in a New York City Bar webinar titled "Employment During a Pandemic: COVID-19 and the Major Issues Affecting New York Workplaces," where he presented on, *inter alia*, major wage-and-hour issues arising in the wake of the COVID-19 pandemic. On April 13, 2021, Mr. Cuadra presented in a New York City Bar webinar titled "How to Handle a Prevailing Wage Matter in New York," which focused on prevailing wage issues arising under Article 8 of the NYLL. On June 1, 2021, Mr. Cuadra again presented in a New York City Bar webinar titled "Classifying Workers: Employed, Jointly Employed, or Independent Contractor," concerning misclassification issues in wage-and-hour actions. Mr. Cuadra is a native Spanish speaker, the language of Plaintiffs in this Action.

36. Mr. Cuadra's hourly billable rate as a partner at PLG is $450 per hour for all clients. It was $400 per hour for all PLG clients before 2021, when Mr. Cuadra was an associate attorney. Since 2015, PLG's clients who have paid at these hourly rates include a Fortune 100 transportation company, a shoe manufacturer, numerous executives and upper-level managers and company board members, a financial recruiting company, a security company, and several restaurants. Following a bench trial in the *Espinosa* case, Magistrate Judge Sarah Netburn of the United States District Court, Southern District of New York recommended only a minor $25 reduction to Mr. Cuadra's then-$400 per hour billable rate, down to $375, to account for the fact that he is a "plainly impressive" lawyer "performing at the high end within [his] field." *Espinosa*, No. 18 Civ. 8855, at *8–9 (S.D.N.Y. Jan. 27, 2020) (ECF No. 58), *rep. & rec. adopted*, 2020 WL 1130743, at *1 (S.D.N.Y. Mar. 9, 2020). Notably, Judge Netburn reasoned that "an award of $400/hour for a *non-partner* and lawyer with ten or fewer years' experience in the field of labor and employment would be exceptional." *Id.* at *8 (emphasis added). This reasoning no longer applies, because Mr. Cuadra is a partner at PLG. His services and experience command a higher billable hourly rate of $450, which PLG's hourly-paying clients have paid in 2021. It also bears noting that Mr. Cuadra's hourly billable rate at Winston & Strawn LLP, eight years ago when he was only a fourth-year associate attorney, was $475.

37. Mirian Albert received her J.D. degree from CUNY School of Law in May 2020, where she served as Staff Editor of the CUNY Law Review. Ms. Albert is admitted to practice in the United States District Courts for the Eastern and Southern Districts of New York and is a member in good standing of the New York State Bar. Since joining PLG in October 2020, Ms. Albert has been actively involved in the litigation of over a dozen wage-and-hour cases drafting pleadings, calculating damages, interviewing

clients, and reviewing and analyzing documents. Ms. Albert's billable hourly rate at PLG has been $175.00 for all clients.

38. We have expended 43.10 hours working on this matter, including drafting and reviewing the Complaint, attempting numerous times to make contact with Defendants, drafting filings for the Court regarding Defendants' default, creating damages calculations, and preparing the instant Motion for Default Judgment. To minimize billings and work more efficiently, Ms. Albert did the bulk of the work on this matter, including the initial client intakes and the initial drafting of documents, with Mr. Cuadra reviewing and revising her work.

39. Annexed as Exhibit 9 are PLG's contemporaneous time sheets for this matter, reflecting a total of $11,347.50 in attorneys' fees. Below is a breakdown of the hours expended in this matter demonstrating the attorneys' hourly rates and hours billed:

| **Attorney** | Louis Pechman | Gianfranco J. Cuadra | Mirian Albert |
|---|---|---|---|
| **Hourly Rate** | $600 | $450 | $175 |
| **Hours Billed** | 0.4 | 15 | 24.90 |
| **Total Sums** | $240 | $6,750 | $4,322.50 |

**TOTAL: $11,347.50**

40. Based on our extensive experience in precisely this type of litigation and our thorough familiarity with the factual and legal issues in this case, we have reached the firm conclusion that the hours reported are reasonable, were necessarily expended on this litigation, and were compiled from contemporaneous time records maintained by each attorney participating in the case.

41. PLG's usual hourly billing rates, reflected in the chart above, are reasonable because they are the actual rates charged to and paid by its hourly-paying clients.

42. Along these lines, in other areas of the law, courts regularly award far higher billable hourly rates than those requested in this Motion. For example, a American

Bar Association article published on May 27, 2020 (link here: https://www.abajournal.com/news/article/at-least-3-biglaw-firms-charge-more-than-1k-an-hour-for-top-associates) explains that top bankruptcy law firms command hourly rates ranging from $1,025 to $1,795 for partners and $595 to $1,105 for associates. This means that after close to forty years of experience as a labor and employment law attorney, I have the same billable hourly rate as a first-year bankruptcy associate attorney.

43. Prior to submitting this declaration, I reviewed the contemporaneous billing records and removed any and all charges for time spent that could be considered duplicative of another billed task and reduced any time charged that could be considered excessive for the particular task. *See generally* Ex. 9. Several of the tasks reflected in the time records are marked "non-billable." *Id.* This includes, for example, administrative tasks and all entries since November 3, 2021. *See id.*

44. In addition, PLG incurred costs totaling $512.00 litigating this case. All costs were reasonably and necessarily incurred and are readily identifiable. They are:

| PLG's Expenses Incurred | Amount |
|---|---|
| Complaint and case initiation filing fee in the EDNY. We respectfully request that the Court take judicial notice of this amount. | $402.00 |
| Service of process on each Defendant, $55.00 per defendant. Ex. 2 (reflecting "$55" cost for service of process on each defendant). | $110.00 |
| **TOTAL CHARGED:** | **$512.00** |

45. Based on the foregoing, Plaintiffs are entitled to recover at least a total sum of $116,637.38 from Defendant, representing $104,777.88 arising out of their FLSA and NYLL claims, $11,347.50 in attorneys' fees, and $512.00 in attorneys' costs, plus pre-judgment interest up to the date judgment is entered and post-judgment interest.

**WHEREFORE**, Plaintiffs Ernesto Zenteno and Noe Huey respectfully request that the Court enter a default judgment in their favor and against Defendant Regina's Family

Pizza Inc. for the sum of at least $116,637.38, plus pre-judgment interest up to the date judgment is entered and post-judgment interest.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Dated: New York, New York
November 11, 2021

PECHMAN LAW GROUP PLLC

By:______________________
Louis Pechman